UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KALITTA AIR, LLC,                                    Case No. 07-14454

        Plaintiff,

v.                                                   Honorable R. Steven Whalen

UNITED AIR LINES, INC.,

        Defendant.
                                                 /

## OPINION AND ORDER

Before the Court is Defendant United Air Lines, Inc.'s Motion for Summary Judgment [Docket #88], filed May 14, 2010. For the reasons set forth below, the motion is DENIED.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Kalitta Air, L.L.C ("Kalitta") and "certain interested underwriter and companies, as subrogee of Kalitta Air, L.L.C." filed suit on October 19, 2007 against United Air Lines, Inc. ("United"), alleging negligence, gross negligence, negligent misrepresentation, and breach of implied warranty. *Docket #1*. The allegations pertain to an October 20, 2004 flight over Lake Michigan during which an engine separated from one of Kalitta's aircraft, resulting in the total loss of the engine and damage to the aircraft. *Amended Complaint* at ¶22, *Docket #12*.

Plaintiffs make the following allegations. In September, 1996, Defendant United, then under contract to service repairs for Polar Air Cargo Worldwide, Inc. ("Polar"), performed repairs to a Pratt & Whitney JT9D-7A engine ("engine 662570"), which included repairs to a high pressure turbine module, serial number C009006 (module). *Id.* at ¶9. Defendant

prepared a "Disassembly Condition Report" stating that it had diagnosed and/or repaired the following problems: 1) a cracked outer case; 2) worn "Stage 2 duet segments"; 3) worn lungs on the Stage 2 shroud; and 4) "overtemp analysis of Stage 1 and 2 blades," indicating that they should be discarded. *Id.* at ¶10. After making repairs, Defendant issued "a maintenance release and Form 337," certifying that the repairs had been performed properly. *Id.* at ¶12. Defendant approved the engine and module for return to service. *Id.* The last repairs to the module were made by Defendant on September 5, 1996. *Id.* at ¶15.

On August 19, 1998, engine 662570 was removed from service by Polar and placed in storage by the owner of the engine, General Electric Commercial Aviation Services. *Id.* at ¶16. The engine was not operated between August, 1998 and the date Kalitta purchased the engine in August, 2003. *Id.* at ¶17. In August, 2004, Kalitta removed the module from engine 662570, and the following month installed the module in another engine ("engine 662253"). Engine 662253, containing the original module, was installed on a Kalitta Air Boeing 747-132 (Aircraft N709CK). *Id.* at ¶21. On October 20, 2004, engine no. 662253, becoming separated from the craft after take-off from O'Hare International Airport in Chicago, plunged into Lake Michigan. *Id.* at ¶22.

In June, 2005, portions of engine 662253 were recovered from Lake Michigan. *Id.* at ¶23. An investigation by the National Transportation Safety Board ("NTSB") found that the module's "2nd stage turbine disk was missing a 180 degree arc of the rim and blade posts." *Id.* at ¶25. The NTSB also found that the engine's structure had been compromised by "the uncontained liberation of the 2nd stage turbine disk rim followed by the extreme

imbalance of the missing rim structuring and the torque loads developed by the clashing of the HPT blades and vanes." *Id.* at ¶27. On August 3, 2007, the FAA issued a bulletin attributing the cause of the HPT 2nd disk rim failure to the incorrect installation of the HPT 2nd stage vane assembly. *Id.* at ¶28. On August 29, 2007, Pratt & Whitney issued an Alert Service Bulletin, attributing the misfunction to 1) improper servicing of the 2nd stage HPT vane retaining bolts; 2) improper application of the lock wire on the 2nd stage HPT vane retaining bolts; and 3) the use of used, rather than new, 2nd stage HPT vane retaining bolts. *Id.* at ¶29. Plaintiffs, alleging negligence, gross negligence, negligent misrepresentation, and breach of implied warranty, request damages for the loss of engine 662253 as well loss of use and incidental and consequential damages. *Id.* at pg. 12.

On May 1, 2008, the Honorable John Feikens dismissed the breach of warranty claim, but otherwise denied Defendant's motion for dismissal under Fed. R. Civ. P. 12(b)(6). *Docket #84* at pg. 4.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS

#### A. Negligence and Gross Negligence

Defendant, while not conceding that the 1996 repairs to the module were negligent, argues primarily that it had no duty to parties other than Polar. The Court therefore limits its discussion to the issue of whether Defendant's allegedly substandard repair of the unit and its 337 certification created a duty to subsequent purchaser Kalitta.

Defendant argues that while it had a *contractual* duty to Polar to perform non-negligent repairs, it did not have any "separate and distinct" duty to non-parties. *Defendant's Brief* at 2 (*citing Fultz v. Union-Commerce Assoc.,* 470 Mich. 460, 465, 683 N.W.2d 587, 591(2004)). Defendant argues further that its issuance of Form 337 (indicating that the module was serviceable) did not create a duty of care to Kalitta. *Id.* at 16. Apparently acknowledging that issuing Form 337 would create a duty to the general public,

Defendant contends that Kalitta is outside "of the class that federal air safety legislation was enacted to protect." *Id.* at 16. Defendant, also asserting that Kalitta performed only a visual inspection of the module, contends that Kalitta shirked its own duty to ensure that the unit was airworthy. *Id.* at 15 (*citing* 14 C.F.R. § 91.403(a)).

Defendant's argument that its contract with Polar foreclosed the possibility that it owed a duty of care to other entities or individuals damaged by its negligence is unavailing. "If the actor's negligent performance of his undertaking results in increasing the risk of harm to a third person, the fact that he is acting under a contract or a gratuitous agreement with another will not prevent his liability to the third person." *Restatement of Torts (2d)* § 324A, comment a.

*Fultz*, cited for the proposition that Defendant's duty was limited to the contractual terms with Polar, is distinguishable from this case. *Fultz* involved a defendant snow removal company whose failure to perform its duties under a contract with the property owner resulted in an injury to a third party. The Court found no liability for the defendant because the injured plaintiff "allege[d] no duty owed to her independent of the contract." 470 Mich. at 468, 683 N.W.2d at 592. *Fultz* also found that "defendant CML's nonfeasance [as opposed to misfeasance] of its contractual obligation" was insufficient to establish "the threshold requirement of establishing a duty owed to plaintiff." *Id.* Defendant, attempting to align the facts of this case to *Fultz*, suggests that its breach of the contract with Polar amounted nonfeasance rather than misfeasance. However, in contrast to *Fultz,* the repairs in question could be viewed as both nonfeasance and active misfeasance, given August,

2007, reports by both the FAA and Pratt & Whitney which touch on both the use of improper parts and faulty installation.

The present set of facts is similar to another slip and fall case in which liability was imposed for injuries to an individual outside the contractual relationship. *Osman v. Summer Green Lawn Care, Inc.,* 209 Mich.App. 703, 532 N.W.2d 186 (1995), overruled in part on other grounds *Smith v. Globe Life Ins. Co.,* 460 Mich. 446, 455-456 n. 2, 597 N.W.2d 28 (1999). In fact, *Fultz*, noting that *Osman* was distinguishable, found as follows:

> "Like the plaintiff here, the plaintiff in *Osman* was injured when she fell on a patch of ice. Also, like the defendant here, the defendant in *Osman* had contracted to provide snow removal services to the premises owner. In that case, however, the defendant had breached a duty separate and distinct from its contractual duty when it created a *new* hazard by placing snow on a portion of the premises when it knew, or should have known or anticipated, that the snow would melt and freeze into ice on the abutting sidewalk, steps, and walkway, thus posing a dangerous and hazardous condition to individuals who traverse those areas."

470 Mich. at 468-469, 683 N.W.2d at 593 (citing *Osman, supra* at 704, 532 N.W.2d 186)(punctuation omitted)). Unlike the snow removal defendant in *Fultz*, present Defendant did not refrain from undertaking the module repairs (nonfeasance), but instead, allegedly performed them negligently, if not in reckless disregard for the safety of others (misfeasance). *See Plaintiffs' Exhibit 2* at 5, 8-13.

Defendant cites the Michigan Supreme Court's peremptory order in *Mierzejewski v. Toree & Bruglio, Inc.*, 477 Mich. 1087, 729 N.W.2d 225 (2007), for the proposition that *Osman* is no longer good law. However, on September 7, 2010, the Michigan Court or

Appeals soundly rejected that argument, and reaffirmed the continuing vitality of the *Osman* Court's interpretation of *Fultz*. *Boylan v. Fifty-Eight Limited Liability Co.,* — N.W. 2d —, 2010 WL 3488995, *6 (Mich.App. 2010) ("[W]e specifically reject [defendant's] assertion that the Supreme Court overruled *Osman*...through its peremptory order in *Mierzejewski v. Torre & Bruglio, Inc.*"). In *Boylan*, the Court reversed a grant of summary disposition based on the lower court's misinterpretation of *Fultz*. In constructing a new water main for Lyons Township, the defendant in *Boylan* "entered onto private property, graded the land, and eliminated a swale that had been present before the water main work commenced," resulting in flooding creating a sewage backup to the bathroom and kitchen sink of a private home. Rejecting defendant's assertion that "a contractor owes no duties to any third parties," the court found that in the course of fulfilling its contractual duties to the Township, the defendant created a "new hazard that it should have anticipated would pose a dangerous condition to third persons." In so holding, *Boylan* first noted that "*Fultz* specifically contemplates that despite the existence of a contract, under certain circumstances tort duties to third parties may lie," or, "[s]tated differently, tort liability may attach in the presence of a duty that arises separately and distinctly from the contractual agreement." *Boylan* at *3. The Court then referred to the *Osman* holding that

> "The duty allegedly owing is that which accompanies every contract, a common-law duty to perform with ordinary care the things agreed to be done. Those foreseeably injured by the negligent performance of a contractual undertaking are owed a duty of care." *Id.* at 4, quoting *Osman*, 209 Mich.App. at 710.

Again quoting *Osman*, the *Boylan* Court stated that "[t]he common-law duty of care existed 'separate and apart from the contract itself' as part of 'a general duty owed by [the] defendant to the public of which [the] plaintiff is a part." *Id.* Significantly, *Boylan* observed that "[i]n *Fultz...*,the Supreme Court declined to overrule this portion of *Osman*." *Id.*

Another recent case, *Loweke v. Ann Arbor Ceiling & Partition Co., Inc.,* 2010 WL 1629151, *2 (Mich.App. April 22, 2010), although distinguishing *Osman*, reiterated that the availability of contract damages did not foreclose a duty of care to non-contracting parties:

> "The injury in *Osman* resulted from the defendant's piling snow where it should not have been placed, not from a bad job clearing the parking lot. Thus, under *Fultz*, a subcontractor has a common law duty to act in a manner that does not cause unreasonable danger to the person or property of others only when that duty is 'separate and distinct' from the contract, such as when the defendant creates a 'new hazard' that it should have anticipated would pose a dangerous condition to third persons."

(*citing Fultz,* 470 Mich. at 468-469, 683 N.W.2d 587).

Thus, under the most recent pronouncements of the Michigan Courts, *Osman*, which was factually distinguished by *Fultz*, remains good law, and under that analysis, Defendant's installation of improper parts and its negligent repair work to the module creates a question of fact as to whether its misfeasance resulted in a new and foreseeable hazard.

Consistent with the *Boylan* reasoning, *Irrer v. Milacron, Inc.*, 2007 WL 677902 (E.D. Mich. 2007)(Edmunds, J.), cited by Defendant, is distinguishable on the basis that plaintiffs there failed to "allege facts showing that Milacron created a new hazard that would rise to a duty independent of Milacron's contractual obligations." *Id.* at *4. For differing

-8-

reasons, *Williams v. Aramark Management Services Partnership,* 2009 WL 529632, *4 (Mich. App. 2009), also cited by Defendant, is inapplicable to the present case. In *Williams,* where the plaintiff slipped on a recently mopped floor, the court noted that while the plaintiff alleged a "new hazard," she failed to allege that the employee "placed an unusually large amount of water on the floor or any other conduct that would be considered the negligent creation of a new hazard." *Id.* Again, United's alleged negligent substitution of used parts for new, as well as other irregularities in reassembling are sufficient to support at least a factual question as to whether Defendant's negligence created a new and foreseeable hazard.

Moreover, Defendant breached an affirmative duty to the public in certifying the unit's airworthiness by issuing a Form 337 under the Federal Aviation Regulations and maintenance tag certifying that the module was serviceable. *Plaintiff's Exhibit's* 7-8. Assuming the validity of Defendant's assertion that "[a] mechanic's certification of airworthiness is not valid for any particular period of time into the future," *Defendant's Brief* at 9, non-parties to a contract, at a minimum, would foreseeably rely on the statement that the repairs had been made properly. Kalitta's chief mechanic testified that

> "when you affix your signature with your A & P number to a tag or an item, you're saying that you're responsible for it through its life and if something happens to that piece that you worked on and you did it improperly yet you still signed it as airworthy and serviceable, then they can come back and do a licensing action on you"

*Defendant's Exhibit* 3, pg. 191. Thus, Defendant's affirmative action in certifying the integrity of the repair with the knowledge that it would be relied upon by non-contracting

-9-

parties created a "new hazard" independent of the contract.

Finally, United argues that its alleged negligence was superceded by Plaintiff's failure to disassemble the module to ascertain the quality of repairs for itself. *Defendant's Brief* at 18-19. However, in response, Plaintiff notes that

> "A purchaser of the engine containing the HPT Module is unable to determine by physical inspection if every part and every past repair had been correctly performed; such is not feasible, reasonable, or done by anyone in the industry due to the sheer number of parts in an engine (and thus the cost and time involved to disassemble and physically inspect every part every time an engine is operated)."

*Plaintiff's Brief* at 20 (*citing Exhibit 23, Deposition of Zoltan Kocis,* pg. 99). Rather, "[t]o determine the airworthiness or the continued airworthiness of that engine would be through a records review that details all the items that you have to look for, life-limited parts, history, the time and hours in service and so on and so forth." *Id.* at pg. 97.

Therefore, Defendant is not entitled to summary judgment on the negligence claim.

Further, a reasonable jury could find that Defendant was grossly negligent in its failure to make specified repairs while certifying to the contrary. "'Gross negligence' is conduct that is so reckless "that it demonstrates a substantial lack of concern for whether an injury results." *Woodman v. Kera, LLC,* 280 Mich.App. 125, 152, 760 N.W.2d 641, 656 (2008)(*citing Xu v. Gay,* 257 Mich.App. 263, 269, 668 N.W.2d 166 (2003)).

Defendant's certification that the module was serviceable stands at odds with evidence showing that 1) used rather than new parts were used in the repair; 2) an anti-seize

compound used had not been recommended by the manufacturer; and 3) lock wire had not been correctly applied to 2nd stage HPT vane retaining bolts. It is worth noting that the certification guaranteed the serviceability of an airplane part (as opposed to say, a washing machine or toaster), where a malfunction would foreseeably result in injury or loss of life. Defendant's alleged errors in servicing, coupled with its certification that the unit was airworthy, creates a question of fact as to whether Defendant acted with gross negligence, and therefore summary judgment will be denied on this claim.

### B. Negligent Misrepresentation

Defendant contends further that claims of negligent misrepresentation should be dismissed, arguing that Plaintiff's reliance on the 1996 issuance of Form 337 was unreasonable. *Defendant's Brief* at 17-19. Citing *Forge v. Smith*, 458 Mich. 198, 212 (1998), Defendant argues that "[a]n assurance of future performance 'cannot form the basis of a misrepresentation claim,'" noting further that "[t]here is no fraud where means of knowledge are open to the plaintiff and the degree of their utilization is circumscribed in no respect by defendant." *Defendant's Brief* at 18-19 (*citing Schuler v. American Motors Sales Corp.*, 39 Mich. App. 276, 280, 197 N.W.2d 493 (1972)).

In establishing negligent misrepresentation, the plaintiff must show that he "justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Law Offices of Lawrence J. Stockler*, *P.C. v. Rose,* 174 Mich.App. 14, 30, 436 N.W.2d 70, 79 (1989). As a threshold matter, as discussed

above, a question of fact exists as to whether Defendant owed a duty of care to non-contracting parties to the repair contract. Moreover, because Plaintiffs have provided evidence showing that they would be unable to ascertain whether the module was serviceable without disassembling it at prohibitive cost, the means of discovering deficiencies in the 1996 repairs were not readily available to Plaintiff. *Plaintiff's Brief* at 20 (*citing Exhibit 23, Deposition of Zoltan Kocis,* pg. 99).

Defendant also argues that the certificate of airworthiness only pertained the condition of the unit at the time of repair. *Defendant's Brief* at 17. To be sure, repairs certified in 1996 could not be reasonably inferred to guarantee the unit's performance for all time.[1] However, this is not the basis of the misrepresentation claim. Rather, Plaintiffs allege only that they relied on Defendant's allegedly false statements regarding the quality and type of repairs during 1996 overhaul. A claim of "misrepresentation must be predicated upon a statement

---

[1] 14 C.F.R. § 43.9(a), which governs Form 337 content states in pertinent part:

"[E]ach person who maintains, performs preventive maintenance, rebuilds, or alters an aircraft, airframe, aircraft engine, propeller, appliance, or component part shall make an entry in the maintenance record of that equipment containing the following information: (1) A description (or reference to data acceptable to the Administrator) of work performed. (2) The date of completion of the work performed. (3) The name of the person performing the work . . . . (4) If the work performed on the aircraft, airframe, aircraft engine, propeller, appliance, or component part has been performed satisfactorily, the signature, certificate number, and kind of certificate held by the person approving the work. The signature constitutes the approval for return to service only for the work performed."

relating to a past or an existing fact." *Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich.App. 543, 554, 487 N.W.2d 499, 506 (1992). Plaintiffs' claim is not based on future performance, but instead, that it relied on the United declaration as to the state of the module at 1996 completion of repairs.

If nothing else, a question of fact exists as to whether Defendant 1) employed used, rather new parts in the 1996 repair; and 2) was aware that its false statement that it employed new parts would be relied upon by others to assess the condition of the unit. Because a reasonable jury could find that Plaintiff justifiably relied on the 1996 Form 337 in making its own assessment of the module's condition, summary judgment will be denied on this count as well.

### IV. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [Docket #88] is DENIED.

SO ORDERED.

                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Date: January 3, 2010
_____
### CERTIFICATE OF SERVICE

I hereby certify on January 3, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 3, 2011: **None.**

                                              s/Michael E. Lang
                                              Deputy Clerk to
                                              Magistrate Judge R. Steven Whalen
                                              (313) 234-5217